UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **PATRICIA J. MCNERNEY,** | : | Case No. 09-cv-2625 |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN M. O'MALLEY** |
| v. | : | |
| **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,** | : | **MEMORANDUM & ORDER** |
| **Defendant.** | : | |

Before the Court is Defendant Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss Plaintiff's Complaint. (Doc. 4.) This Motion has been fully briefed and is ripe for adjudication. For the reasons articulated below, Defendant's Motion to Dismiss Complaint is **GRANTED**, and this matter is **DISMISSED**.

**I.    BACKGROUND**

Unless otherwise noted, the following facts are undisputed:

In December of 2002, Plaintiff Patricia J. McNerney ("McNerney") purchased her current home with a loan in the amount of $108,000 from Homecomings Financial Network, Inc. ("Homecomings"). A few months later, McNerney defaulted on the terms of the loan. (Doc. 4-1 at 2.)

On November, 13, 2003, Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Homecomings, commenced a foreclosure action against McNerney in the Cuyahoga County Court of Common Pleas (the "State Court Action"). (Doc. 1 at ¶ 8.) Service was perfected on December 31, 2003. (Doc. 4-1 at 2.) The complaint asserted that MERS was the

holder and owner of the promissory note and, therefore, entitled to collect on the note. (Doc. 1 at ¶ 10.)

Over the next six years, McNerney defended the State Court Action. At some point in 2008, Homecomings Financial Networks, LLC was substituted for MERS in the foreclosure action, although the parties disagree on the exact date when the substitution occurred.[1] On November 13, 2008, at the bench trial, McNerney learned that the note had never been assigned or endorsed to MERS.[2] (*Id.* at ¶ 11.) The state court dismissed the action without prejudice on September 14, 2009. (Doc. 4-3 at 21.) Homecomings then re-filed the foreclosure action in this Court. *See Homecomings Financial Networks, LLC v. McNerney*, Case No. 1:09-cv-02383. (Doc. 4-1 at 2.)

On November 9, 2009, McNerney filed the instant suit against MERS alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. § 1345.02. (Doc. 1.) The Complaint sets forth three causes of action. McNerney alleges that MERS violated the FDCPA by: (1) filing a foreclosure action claiming to be the owner and holder of the note, when it never was the owner and holder; (2) attempting to collect on a debt that it had no right to collect; and (3) using deceptive means to collect or attempt to collect a debt. (Doc. 1 at ¶¶ 16-19.) McNerney also alleges that MERS violated the

---

[1] McNerney asserts that the state court granted MERS' Motion to Substitute Party Plaintiff on November 4, 2008 and substituted Homecomings in place of MERS. (Doc. 5 at 3.) MERS contends that the state court granted its Motion to Substitute Party Plaintiff on January 31, 2008 and substituted GMAC Mortgage, LLC in place of MERS. (Doc. 6 at n.4.) Although the state court docket is unclear, the actual date of substitution has no affect on the outcome of the pending motion.

[2] In the Complaint, McNerney alleges that the bench trial occurred "on or about 11/10/2008." (Doc. 1 at ¶ 11.) The state court docket, however, indicates that the bench trial occurred on November 13, 2008. (*See* Doc. 4-3 at 19.) McNerney corrected this error in her reply brief. (*See* Doc. 5 at 3.)

OCSPA when it filed the State Court Action claiming to be the holder and owner of the note. (*Id.* at ¶ 28.) The Complaint seeks actual damages as well as statutory damages, costs and attorneys fees. (*Id.* at 6-7.)

On January 12, 2010, MERS filed a Motion to Dismiss arguing that dismissal is appropriate for two separate and independent reasons. First, MERS argues that all three of McNerney's claims are barred by the applicable statute of limitations. (Doc. 4-1 at 4-5.) Second, MERS contends that, even if McNerney timely filed her claims, they nonetheless fail because MERS is not a "debt collector" under the FDCPA and McNerney's mortgage is not a "consumer transaction" under the OCSPA. (*Id.* at 5-8.) McNerney filed an opposition brief on February 9, 2010. (Doc. 5.) MERS subsequently filed its reply on February 26, 2010. (Doc. 6.)

## II.  STANDARD OF REVIEW

The Court may dismiss a claim for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion under 12(b)(6) is to test the sufficiency of the complaint – not to decide the merits of the case.

It is well-established that a complaint need not set forth in detail all of the particularities of the plaintiff's claim. *See Myers v. Delaware Co.*, No. 2:07-cv-844, 2009 U.S. Dist. LEXIS 98143, *6 (S.D. Ohio Oct. 22, 2009). Instead, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 does not, however, "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). While legal conclusions can provide the framework for a complaint, all claims must be supported by factual allegations. *Id*. The Supreme Court has indicated that "[t]hreadbare recitals of the elements of a cause of action,

3

supported by mere conclusory statements, do not suffice." *Id*. at 1949; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)("[A] formulaic recitation of the elements of a cause of action" is insufficient).

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is <u>plausible</u> on its face." *Twombly*, 550 U.S. at 570 (emphasis added).[3] The requisite facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. The plausibility requirement is not the same as a "probability requirement" but instead "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Therefore, where a complaint pleads facts that are "merely consistent with" the defendant's liability, "its stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (citing *Twombly*, 550 U.S. at 557). Examining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950.

A district court considering a motion to dismiss must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998); *Iqbal*, 129 S.Ct. at 1950 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether

---

[3] In her briefing, McNerney argues that a motion to dismiss pursuant to Rule 12(b)(6) "should not be granted 'unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of [her] claim which would entitle [her] to relief.'" (Doc. 5 at 3) (citing *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). McNerney's reliance on the standard articulated in *Conley* is misplaced, particularly since it was expressly overruled by the Supreme Court in *Twombly*: "Today, . . . the Court scraps *Conley's* 'no set of facts' language . . . [and] dismisses it as careless composition." *Twombly,* 550 U.S. at 577.

4

they plausibly give rise to an entitlement to relief."). Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. *Iqbal*, 129 S.Ct. at 1950. In sum, the allegations in the complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### III. ANALYSIS

Resolution of the MERS' Motion to Dismiss turns on whether the statutes of limitations applicable to McNerney's claims can be extended by equitable tolling or reference to a continuing violation theory. For the reasons articulated below, the Court finds that: (1) equitable tolling does not apply to McNerney's FDCPA claims, and her claims are, therefore, barred by the one year statute of limitations applicable to FDCPA claims; and (2) because the continuing violation theory does not apply to McNerney's OCSPA claim, it is barred by that statute's two year statute of limitations.

#### A. McNerney's FDCPA Claims Are Time-Barred.

The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 591 (6th Cir. 2009) (quoting 15 U.S.C. § 1692(e)). In order to determine if a debt collector's practice is a violation of the FDCPA, courts must apply the objective "least-sophisticated-consumer" test. *Kistner v. Law Offices of Michael P. Margelefsky LLC*, 518 F.3d 433, 438 (6th Cir. 2008). This test is designed "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* (quoting *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007). As discussed below, it is unnecessary for the Court to assess the merits of McNerney's FDCPA claims because they: (1) are barred by the one year statute of limitations; and (2) equitable tolling does not apply. Accordingly, the Court finds that McNerney's FDCPA claims

5

fail as a matter of law.

### 1. McNerney's FDCPA Claims Are Subject to a One Year Statute of Limitations.

McNerney's FDCPA claims are premised on the State Court Action, which MERS filed in 2003. MERS asserts that the statute of limitations for the FDCPA claims began to run on December 31, 2003, the date of service of the complaint in the State Court Action, and, thus, that the FDCPA claims are barred by the statute of limitations. (Doc. 4-1 at 4-5.) McNerney does not contest MERS' assertion that the statute of limitations for her claims has expired. Instead, she seeks to extend the limitation period through equitable tolling.

Claims under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k. Courts, however, are split as to when the statute of limitations for FDCPA claims begins to run. While some courts have found that the statute begins to run when the underlying collection action is filed, others have found it begins to run on the date the debtor was served with the complaint. *Compare Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997) *with Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002). The Sixth Circuit has made clear that it has not yet "answer[ed] whether the FDCPA's one-year clock started when [the defendant] filed its suit or when it served [the plaintiff]." *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 914 (6th Cir. 2010) ("*Ruth II*").[4] The answer to this question, however, does not affect the outcome of this case as McNerney's claims are time-barred under either approach.

MERS filed its state court complaint on or about November 10, 2003, and served McNerney

---

[4] The Sixth's Circuit opinion in *Ruth II* affirmed the district court's opinion on only certain of the grounds addressed therein, apparently not having been presented with the lower court's other grounds, for decision on appeal. *See Ruth v. Unifund CCR Partners*, No. 5:08CV2690, U.S. Dist. LEXIS 17362 (N.D. Ohio Mar. 6, 2009). When citing to other findings in the district court opinion, the Court refers to the district court opinion as "*Ruth I*."

on December 31, 2003. (Doc. 4-1 at 2.) McNerney did not file her Complaint in this Court until November 9, 2009. (*See* Doc. 1.) Whether measured from the date filed or the date of service, McNerney's FDCPA claims are untimely, as they were filed beyond the one year limitation period. McNerney's FDCPA claims, therefore, are barred by the statute of limitations unless she can utilize the doctrine of equitable tolling to save her claims.

### 2. Equitable Tolling Does Not Apply to McNerney's FDCPA Claims.

The general rule this Court must follow is that a governing statute of limitations is not to be extended "'by even a single day.'" *Ruth II*, 604 F.3d at 910 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000)). There are certain exceptions to that rule, however, which allow the statute of limitations to be tolled so as to prevent inequity. *Pace v. DiGuglielmo*, 554 U.S. 408, 418 (2005). These exceptions are to be narrowly construed, however, and only applied in extraordinary circumstances. *Ruth I*, 2009 U.S. Dist. LEXIS 17362 at *23 (collecting cases). The plaintiff bears the burden of proving that she is entitled to equitable tolling, moreover. *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003).

McNerney's Complaint is cryptic and her opposition brief does not say much more to clarify the grounds on which she seeks to toll the statute of limitations. It is clear, however, based on McNerney's claim that "the fact that MERS did not have an interest in the state court action did not come to light until November 10, 2003" (Doc. 5 at 1), and her citation to *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783 (S.D. Ohio 2006), that she is relying upon the concept of fraudulent concealment to support her argument that her FDCPA claim should be equitably tolled in this case.[5]

---

[5]In *Foster*, the court applied equitable tolling in an FDCPA case, relying exclusively on *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984). In *Jones*, the court equitably tolled the statute of limitations in connection with Truth in Lending Act ("TILA") claims, holding that:

7

(Doc. 5 at 4.)

McNerney is correct that fraudulent concealment is one of the extraordinary circumstances under which courts have chosen to equitably toll various statutes of limitations. *Ruth II*, 604 F.3d at 910. McNerney's problem with reliance on this principle, however, is that she has not alleged facts in her Complaint, asserted any in her opposition brief, nor sought leave to amend her Complaint to do so, that would support tolling the statute of limitations on those grounds.

In *Ruth II*, a case presenting facts akin to this one, the Sixth Circuit considered whether and under what circumstances allegations of fraudulent concealment can delay the running of the statute of limitations under the FDCPA. The Sixth Circuit declined to decide whether a time-barred action under the FDCPA can ever be revived by equitable tolling. Instead, the court concluded that, even if equitable tolling were operable in such cases, it would only be under circumstances which it found not present in *Ruth II*. As here, the plaintiff in *Ruth II* relied on *Foster* and claimed that the fact that the defendant filed and maintained a lawsuit claiming to be the owner and holder of a mortgage, when it was not, tricked plaintiff into believing that claim and into assuming that no viable cause of action existed under the FDCPA. The Sixth Circuit considered and rejected Ruth's claim. *Id.* at 909.

The *Ruth II* Court began its analysis by noting that, "without a cognizable claim of fraudulent concealment the lawsuit must be dismissed, because [the plaintiff] filed it more than one year after

---

> the statute of limitations for actions brought under 15 U.S.C. § 1640(e) is subject to equitable tolling in appropriate circumstances, and that for application of the doctrine of fraudulent concealment, the limitation period runs from the date on which the borrower discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation.

*Foster*, 463 F. Supp. 2d at 800 (quoting *Jones*, 747 F.2d at 1043). The Court does not decide whether *Foster* is persuasive authority; it need not do so in light of the other conclusions reached in this Order.

8

her cause of action accrued." *Id.* at 910. The Court then explained that, under the doctrine of fraudulent concealment, a plaintiff is entitled to the equitable tolling of the statute of limitations only if: (1) the defendant actively concealed its wrongful conduct from plaintiff; (2) that concealment prevented the plaintiff from discovering the defendant's wrongdoing during the limitations period; and (3) the plaintiff exercised due diligence in trying to uncover the defendant's conduct or to find out about the cause of action. *Id.* (citing *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009). Applying this standard to the facts in *Ruth II*, the Court found that, even if it were to assume that the defendant's filing of an action without authority to do so and then resisting and delaying discovery responses sought by Ruth relating to her capacity to sue amounted to active concealment, Ruth could still not sustain her claim of fraudulent concealment. *Ruth II*, 604 F.3d at 910. The Court found that Ruth failed to "show that the alleged concealment prevented her from discovering any wrongdoing during the limitations period or that she exercised diligence in trying to uncover [the defendant's] conduct." *Id.*

Specifically, the Sixth Circuit relied both upon Ruth's assertion of a lack of capacity defense in the foreclosure action and the availability of public sources of information regarding ownership of the mortgage to conclude that Ruth had not and could not allege sufficient diligence. *Id.* at 911. As the court noted, "Ruth must show that she could not uncover critical information, her 'reasonable investigation notwithstanding.'" *Id.* at 913 (quoting *Gould v. United States Dep't of Health and Human Services*, 905 F.2d 738, 745-46 (4th Cir. 1990) (en banc)).

McNerney's attempt to resort to equitable tolling to save her time-barred claims fails for many of the same reasons cited by the Sixth Circuit in *Ruth II*. Indeed, McNerney's allegations are even more sparse than those considered in *Ruth II*. McNerney's sole factual allegation in support of her

equitable tolling claim is that the fact that MERS was not the holder of the note did not "come to light" until the November 2008 state court trial. (Doc. 1 at ¶ 11; Doc. 5 at 1.) Unlike Ruth, McNerney does not cite to dilatory discovery or other improper litigation tactics and does not otherwise point to any active concealment by MERS of its true status vis-a-vis the note and mortgage. As MERS points out, moreover, the mortgage documents were attached to the state court complaint and nothing in those documents identified MERS as the record owner. McNerney had over five years during which the foreclosure action was pending to either conduct discovery or do a simple records check to confirm or refute MERS' claimed capacity to sue. Nothing in either her Complaint or opposition brief either alleges diligence on her part or asserts facts upon which such an allegation could be premised.

McNerney's bare assertion that she did not know about her FDCPA cause of action sooner is simply not enough to equitably toll her claims. *See Zigdon v. LVNV Funding, LLC*, 2010 U.S. Dist. LEXIS 53813, at *31 (N.D. Ohio Apr. 23, 2010) ("Lack of awareness is clearly not diligence in trying to find out about [an FDCPA] cause of action."); *see also Byrd v. Law Office of John D. Clunk Co., LPA,* No. 1:09-cv-076, 2010 U.S. Dist. LEXIS 20636, at *11 (S.D. Ohio Mar. 8, 2010) (plaintiffs were not entitled to equitable tolling of their FDCPA claim because they did not "make some reasonable showing of their diligence in discovering their claim").

As MERS correctly notes, McNerney does not provide the Court with any facts, either in the Complaint or in her reply brief, to suggest that she exercised due diligence in discovering her claim against MERS. Similarly, McNerney does not allege that MERS did anything to conceal evidence relating to MERS' capacity to file the foreclosure action. (Doc. 6 at 4.)[6] As a result, McNerney

---

[6] MERS further points out that, at the time of trial, it was not the party-plaintiff, it was not represented at trial, and the state court complaint caption clearly stated that MERS was acting in

10

simply has not met her burden of demonstrating that she is entitled to equitable tolling of her FDCPA claims.[7]

### B. McNerney's OCSPA Claim is Time-Barred.

The OCSPA "prohibits suppliers from committing either unfair or deceptive consumer sales or practices." *Johnson v. Microsoft Corp.*, 106 Ohio St. 3d 278, 2005 Ohio 4985, 834 N.E.2d 791, 800 (2005). McNerney alleges that MERS violated the OCSPA when "it filed the complaint in the foreclosure action stating that it was the holder and owner of the note and this was a false statement." (Doc. 1 at ¶ 28.) As discussed below, it is unnecessary for the Court to assess the merits of McNerney's OCSPA claim because: (1) it is barred by the two year statute of limitations; and (2) a continuing violation theory does not apply. Accordingly, the Court finds that McNerney's OCSPA claim fails as a matter of law.

#### 1. McNerney's OCSPA Claim is Subject to a Two Year Statute of Limitations.

Pursuant to O.R.C. § 1345.10(C), consumers may not bring claims under the OCSPA "more than two years after the occurrence of the violation which is the subject of the suit." Ohio Rev. Code § 1345.10(C). In her Complaint, McNerney states that MERS violated O.R.C. § 1345.02(A) when it filed the State Court Action. (Doc. 1 at ¶ 28.) The statute of limitations for McNerney's claim under the OCSPA began to run, therefore, on November 10, 2003, and expired on November 10, 2005. Since the Complaint before this Court was not filed until November 9, 2009, almost four years after the statute of limitations expired, McNerney's claim is time-barred unless she can demonstrate

---

its capacity as nominee for Homecomings. (Doc. 6 at 4).

[7] MERS also argues in its Motion to Dismiss that it is not subject to the FDCPA because it is not a "debt collector" within the meaning of the statute. The Court need not address this argument because McNerney's FDCPA claims are barred by the statute of limitations.

11

that a continuing violation theory is applicable.

### 2. Continuing Violation Theory Does Not Apply to McNerney's OCSPA Claim.

In order to save her OCSPA claim, McNerney contends that it is subject to a continuing violation theory. (Doc. 5 at 4.) Under a continuing violation theory, "the statute of limitations does not begin to run on a continuing wrong until the wrong has been concluded." *Ruth I*, 2009 U.S. Dist 17362 at *35 (citing *Matthews v. Capital One Bank*, 2008 U.S. Dist LEXIS 90157, at *3 (S.D. Ind. Oct. 24, 2008)).[8] Furthermore, the conduct at issue must constitute a continuing pattern rather than a series of unrelated acts. *Id.* (quoting *Joseph v. J.J. MacIntyre Cos.*, 281 F. Supp. 2d 1156, 1161 (N.D. Cal. 2003)).

McNerney asserts that MERS continued to violate the OCSPA until it substituted itself with Homecomings and was no longer a party to the action, but does not make any substantive argument as to why the theory should apply to the facts of her case. (Doc. 5 at 5.) The sole case McNerney cites without any discussion, *Montoney v. Lincoln Logs, Ltd.*, 2007 Ohio 236, ¶ 31 (Ohio Ct. App. Jan. 23, 2007), is readily distinguishable because: (1) it dealt with the annual renewal of a contract; and (2) the court found that the statute of limitations began to run upon the termination of a final renewal. *Montoney*, 2007 Ohio 236 at ¶ 31 (quoting *Roelle v. Orkin Exterminating Co., Inc.*, No. 00AP-14, 2000 Ohio App. LEXIS 5141, at *22 (Ohio Ct. App. Nov. 7, 2000)). The facts of this case differ significantly from the facts in either *Montoney* or *Roelle* as the conduct at issue here is the filing of the State Court Action rather than a renewable contract.

---

[8] In *Ruth I*, the district court addressed the applicability of a continuing violation theory in the context of FDCPA claims. *Ruth II* only addressed equitable tolling and did not discuss the applicability of a continuing violation theory to the action. Accordingly, this Court cites to *Ruth I* in its discussion of whether McNerney's OCSPA claim is subject to a continuing violation theory.

In *Ruth I*, the district court addressed a continuing violation theory in connection with plaintiff's FDCPA claims. Specifically, the plaintiff alleged that the defendant's "filing of suit without legal capacity, and then mere maintenance of that suit . . . without remedying its lack of legal capacity, constituted a continuing violation." *Ruth I*, 2009 U.S. Dist 17362 at *36. The court found that merely maintaining a lawsuit, in and of itself, is not a continuing violation, and that, "'[f]or conduct during litigation to be actionable, a plaintiff must allege [. . .] that the conduct is a violation of the FDCPA independent of the act of filing suit.'" *Id.* (quoting *Schaffhauser v. Burton Neil & Assocs.*, No. 1:05-CV-02075, 2008 U.S. Dist. LEXIS 24894, at *2 (M.D. Pa. Mar. 27, 2008) (citation omitted)). Although *Ruth I* dealt with a continuing violation theory in the FDCPA context, the court's analysis is equally applicable here because McNerney is attempting to use the same argument rejected by the *Ruth I* court to save her OCSPA claim.

The sole basis for McNerney's OCSPA claim is MERS' conduct in pursuing the State Court Action. As was the case in *Ruth I*, McNerney "has not alleged any facts or provided any authority suggesting that it was yet another violation for [defendant] to maintain the suit." *See Ruth I*, 2009 U.S. Dist 17362 at * 37. Because maintaining a lawsuit (as distinct from instituting one) is not, in and of itself, a continuing violation, and because McNerney has not offered any facts to show other OCSPA violations, the Court finds that the continuing violation theory does not apply to her OCSPA claim. Accordingly, McNerney's OCSPA claim is time-barred.[9]

---

[9] MERS argues in its Motion to Dismiss that it is not subject to the OCSPA because McNerney's mortgage does not qualify as a "consumer transaction" within the meaning of the statute. The Court need not address this issue because McNerney's OCSPA claim is barred by the statute of limitations.

13

## IV. CONCLUSION

For the foregoing reasons, MERS' Motion to Dismiss Complaint is **GRANTED**. This case, therefore, is **DISMISSED.**

**IT IS SO ORDERED.**

                                            **s/Kathleen M. O'Malley**
                                            **KATHLEEN McDONALD O'MALLEY**
                                            **UNITED STATES DISTRICT JUDGE**

**Dated: August 13, 2010**